IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROGER L. BROWN, | : | CIVIL ACTION NO. **4:CV-06-0851** |
| | : | |
| Petitioner | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| TROY WILLIAMSON[1], | : | |
| | : | |
| Respondent | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

Petitioner, Roger L. Brown, an inmate at the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg"), filed a Petition for Writ of Habeas Corpus on April 25, 2006, pursuant to 28 U.S.C. § 2241. **(Doc. 1).**[2] Petitioner essentially challenges the January 26, 2006 denial of parole by the U.S. Parole Commission ("USPC" or "Commission") with respect to his sentence of 30 years to life for a June 11, 1980 criminal conviction in the District of Columbia ("D.C.") Superior Court. Petitioner paid the fling fee. (Doc. 4). We give preliminary consideration to the Petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in

---

[1]Respondent Williamson is the Warden at USP-Lewisburg. He has custody of Petitioner. *See* 28 U.S.C. § 2242 & § 2243. *Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

[2]Petitioner styles his Habeas Petition as being under § 2241. (Doc. 1). The Third Circuit has held that a challenge to the validity or execution of a D.C. Superior Court sentence, such as Petitioner's sentence, even if Petitioner is incarcerated in a federal prison, is a challenge to a state sentence and must proceed under 28 U.S.C. § 2254, and not § 2241. *See DeVaughn v. Dodrill*, Appeal No. 03-4162 (3d Cir. August 23, 2005), slip op. p. 3 (citations omitted) (Non-precedential). However, in our case, Petitioner is challenging the United States Parole Commission's denial of his parole, and not the execution of his state sentence. Thus, Petitioner may proceed under §2241.

the U.S. District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions under Rule 1 (b)). *See Patton v. Fenton*, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979).[3]

On June 11, 1980, after a jury found him guilty, Petitioner was sentenced by the District of Columbia Superior Court to a term of thirty (30) years to life imprisonment. (Doc. 1, p. 3).[4] Petitioner states that he directly appealed his judgment of conviction to the District of Columbia Court of Appeals. (*Id*.). Petitioner indicates that in July 1982, the Court of Appeals affirmed his conviction. (Doc. 1, p. 3). Petitioner does not indicate if he filed a Motion for Reduction of Sentence under D.C. Code § 23-110 with the District of Columbia Superior Court.

## II. Discussion.

Petitioner only contends that he "was seen by Parole Commission Examiner using new guidelines that does (sic) not apply to him." (*Id*., p. 4). Petitioner simply states: "On January 25, 2006 a hearing took place to determine Petitioner's suitability for parole. Examiner used guidelines that were not in effect at the time of Petitioners (sic) sentence. Petitioner was not seen using D.C. Parole Board guidelines (Violation of the Expo (sic) Facto Clause)." (*Id*., p. 4).

---

[3]Rule 4 provides in relevant part: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

[4]Petitioner does not  specifically identify the D.C. Code offenses of which he was convicted. (Doc. 1, p. 3). Petitioner only indicates that his sentence was 30 years to life imprisonment.  (Doc. 1, p. 3).

We construe Petitioner's Habeas Petition to only challenge the USPC's use of guidelines in its January 2006 parole decision which were not in effect at the time of Petitioner's June 1980 District of Columbia Superior Court conviction and sentence. (Doc. 1, p. 4). Thus, Petitioner is not attacking his D.C. conviction and sentence. Nor is Petitioner claiming that his D.C. sentence was computed erroneously. Rather, Plaintiff is solely claiming that the USPC violated the *Ex Post Facto* Clause by using parole guidelines which were not in effect in June 1980. Petitioner states that he had a parole hearing by the USPC[5] on January 25, 2006.

*1. Ex Post Facto Claim.*

Petitioner raises an *ex post facto* claim that the Commission should have applied the D.C. parole guidelines as contained in the D.C. law, and not the federal guidelines contained in 28 C.F.R. He claims that by applying the federal guidelines that were not in effect at the time of

---

[5]We are well aware that the National Capitalization and Self-Government Improvement Act of 1997 gave the USPC authority to make parole decisions for D.C. Code offenders. Presumably, in Petitioner's case, the Court Services and Offender Supervision Agency for the District of Columbia, Board of Parole - Office of the Board, issued a Transmittal to the U.S. Parole Commission transferring jurisdiction over the Petitioner to the U.S. Parole Commission pursuant to the "National Capital Revitalization & Self-Government Improvement Act of 1997" (the "Act").

As this Court recently noted in *Reynolds v. Williamson*, 2005 WL 3050154 (M.D. Pa.)   *1, n. 1:

> On August 5, 1998, "the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code" was transferred to the Commission. National Capital Revitalization and Self-Government Improvement Act of 1997, ("Revitalization Act"), Pub.L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745.

*See also Fletcher v. Reilly*, 433 F. 3d 867, 872 (D.C. Cir. 2006).

his D.C. sentence in 1980, the USPC violated the *Ex Post Facto* clause.  Significantly, Petitioner does not state or explain how he was subjected to a harsher punishment than what was in place at the time of his conviction.  (Doc. 1, p. 4).  Petitioner indicates that his D.C. conviction occurred prior to the enactment of new guidelines and that the Commission should not have used these standards.   Petitioner does not claim that  the federal guidelines are more onerous than the D.C. parole guidelines or that  application of the federal guidelines  in his case enhanced his parole eligibility date.

   We find that Petitioner's *ex post facto* claim is without merit, since the Commission's parole guidelines do not substantially circumscribe the Commission's discretion and since Petitioner has not established  that he has been materially disadvantaged by the use of these guidelines in his case.  We are cognizant that the Commission incorporated the pertinent D.C. parole regulations into the Code of Federal Regulations (28 C.F.R. § 2.80, *et seq.*) using the same basic point scoring system.  *See Reynolds, supra* at *1-*2.  The  Commission simply modified the point scoring system used by the D.C. Board to reflect the D.C. Board's actual practice of applying various discretionary factors to justify departures from the guidelines; that is, by using frequent factors relied upon by the D.C. Board for upward departures from the 1987 guidelines and to provide a way to more accurately predict an inmate's potential for violent recidivism.  Thus, the 1987 guidelines used by the D.C. Board did not substantially circumscribe the Commission's discretion.  Therefore, as this Court in *Reynolds* found with respect to Petitioner Reynolds, our Petitioner has not established that the use of the revised guidelines resulted in a harsher parole eligibility date than he would have received from the

D.C. Board, *i.e.* the change in the guidelines created a significant risk of increasing Petitioner's punishment.   *Id.*, p. *4.

As the *Fletcher* Court stated, "[i]n 2001, the Commission undertook a final round of rulemaking in relation to its repeople provision for D.C. Code offenders." 433 F. 3d at 872.[6] However, unlike in *Fletcher*, our Petitioner does not claim that the retroactive application of the federal reparole regulations adversely affected his suitability for parole.  Rather, our Petitioner claims that he was not considered for parole "using D.C. Parole Board Guidelines" in effect at the time of his sentence, and that this violated the *Ex Post Facto* clause.  (Doc. 1, p. 4).

Moreover, this Court, as well as the United States District Court for the District of Columbia, have held that the USPC's guidelines do not constitute laws for *Ex Post Facto* Clause purposes.  *Id.*, p. *5; *Moore v. Bledsoe*, 2005 WL 2709279 * 4 (W.D. Va.).  "A law that increases the punishment over that permitted to be imposed when the crime was committed violates the *Ex Post Facto* Clause." *Smith v. U.S. Parole Comm'n*, 875 F. 2d 1361, 1366 (9th Cir. 1988).  As stated, Petitioner claims that the use of the Commission's federal guidelines and not the D.C. Parole Guidelines which were in effect at the time of his sentence, violated the *Ex Post Facto* clause.  Petitioner does not claim or show that the guidelines used by the Commission in his case in January 2006 were harsher than the guidelines under the D.C. parole laws.  As the Third Circuit recently stated in *Shaffer v. Meyers*, 2006 WL 45547, Appeal No. 04-4120 (3d Cir. 1-10-06) (Non-Precedential), sip op. p. 4, "with regard to the *Ex Post Facto* Clause, we

---

[6]The Reparole Amendment is codified at 28 C.F.R. § 2.81 (2005).  *See Fletcher*, 433 F. 3d at 872.

emphasize that there are two prongs to a successful claim: [Plaintiff] must show not only that there has been a change in law or policy which has been given retrospective effect but also that its retrospective application to him created a real risk of increasing the measure of his punishment." (Citing *Richardson v. PA Parole Board*, 423 F. 3d 282, 288 (3d Cir. 2005)).

In *Bonilla v. Vaughn*, 1998 WL 480833, * 7 (E.D. Pa.), the Court stated that:

> [P]arole guidelines [can] constitute laws within the meaning of the ex post facto clause." *Crowell v. United States Parole Com'n,* 724 F.2d 1406, 1408 (3d Cir. 1984). In *Crowell*, the Third Circuit stated that the test for determining if the Parole Commission's guidelines are laws, in the context of ex post facto analysis, is whether the guidelines are applied "rigidly, or with substantial flexibility . . ." *Id.* If applied rigidly, or mechanically, guidelines can, in some instances, violate the ex post facto clause. Similarly, in *Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), the Supreme Court held that a cancellation of good time credits, resulting in the reincarceration of a prisoner, violated the ex post facto clause. *See id.* at 900. On the other hand, 'speculative and attenuated possibilities' of increasing the measure of punishment do not implicate the ex post facto clause. *Id.* at 897 (citing *California Dept. of Corrections v. Morales*, 514 U.S. 499, 510, 115 S.Ct. 1597, 131 L.Ed. 2d 588 (1995).

(Citation omitted).

In *Muhammad v. Mendez*, 200 F. Supp. 2d 466, 469-470 (M.D. Pa. 2002), this Court stated as follows:

> It is well settled that the determination of eligibility for parole has been committed by Congress to the discretion of the Commission. *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *Campbell v. United States Parole Commission,* 704 F.2d 106 (3d Cir. 1983). The Commission assumed the responsibility for making parole release decisions for all eligible District of Columbia Code felony offenders on August 5, 1998 pursuant to the Revitalization Act and D.C. Code 24-209. [FN4] *See* 28 C.F.R. § 2.70. Therefore, the Commission has authority over Muhammad who is a D.C. offender. The guidelines for D.C. offenders are regulated by

>28 C.F.R. § 2.80.
>
>FN 4 Effective August 5, 2000, the Commission was given the remaining responsibilities of the former D.C. Board of Parole regarding the supervision of parolees and the revocation of parole for release violations. § 11231(a)(2) of the Act, codified at D.C. Code § 24-1231(a)(2).
>
>Because the Constitution itself does not create any liberty interest in parole, such an interest to prove a due process violation must emanate from state law, or in this case, District of Columbia law. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Courts have consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they are transferred to the jurisdiction of the Commission, does not create any liberty interest in parole. See, e.g., McRae v. Hyman, 667 A.2d 1356 (D.C. 1995) (The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion); Ellis v. District of Columbia, 84 F.3d 1413 (D.C. Cir. 1996) (D.C. Parole statute and regulations do not create any liberty interest in parole.)
>
>The Revitalization Act requires the Commission to follow the existing parole laws and rules of the District of Columbia, but also gives the Commission the same authority previously enjoyed by the D.C. Board of Parole to "amend and supplement" the D.C. parole rules, which it has done. See D.C. Code § 24-1231(a). The Commission's amended version of the parole rules and guidelines of the D.C. Board of Parole was published at 63 Federal Register 39172 (July 21, 1998) and is codified at 28 C.F.R. § 2.80 et seq.[7]

Additionally, the Court in *Allston v. Gaines*, 158 F. Supp. 2d 76 (D.D.C. 2001), held that the test to be applied in considering whether the Commission's guidelines are laws for *ex post facto* purposes is the Third Circuit's approach annunciated in *Forman v. McCall*, 776 F. 2d 1156, 1158 (3d Cir. 1985), *cert denied*, 476 U.S. 1119 (1986) ("if administered without sufficient flexibility, the guidelines could be considered laws for ex post facto purposes"). We find that in

---

[7]In our case, as in *Muhammad*, as both parties recognize, the Commission has authority over Petitioner, who is a D.C. offender. *See Reynolds, supra.*

applying this analysis in the present case, the Petitioner's *ex post facto* claim does not entitle him to habeas relief.

In *Allston*, the Court noted that "[u]nder the Third Circuit's approach, a court would need to evaluate whether the Parole Commission has discretion under the guidelines and how much discretion it has, including undertaking a statistical evaluation of the percentage of cases in which the Commission issues set-offs outside the range of months specified in the guidelines." 158 F. Supp. 2d at 82. In *Blair-Bey v. Quick*, 159 F. 3d 591, 592 (D.C. Cir. 1998), the court stated for a Petitioner to succeed on an *ex post facto* claim, he must show "at a minimum that the D.C. BOP's [here, the Commission's] discretion under the guidelines is totally or very substantially circumscribed in law or in fact and yields results materially harsher than those ordinarily occurring under the prior regime." The Court also stated that this was a "heavy" burden for a Petitioner to meet. *Id.*

This Court has already held that while the Revitalization Act obligates the Commission to follow the existing rules of D.C. Parole Board, the Commission has the authority to "amend and supplement" the D.C. parole rules. *Muhammad*, 200 F. Supp. 2d at 470. The Commission has codified its amended version of the parole rules and guidelines of the D.C. Parole Board and uses essentially the same point scoring system that the D.C. Board used. *See* 28 C.F.R. § 2.80 and *Ellis v. District of Columbia*, 84 F. 3d 1413, 1415-1416 (D.C. 1996). This Court has previously found that the modifications which the Commission has made to the point scoring system used by the D.C. Board incorporate factors upon which the D.C. Board relied to upwardly depart from its 1987 guidelines. *Id.* at 1416. The Commission's point scoring system

increased the number of points for violent levels in convicted offenses and the number of previous violent episodes, which modifications it found to be a more accurate predictor of the prisoner's propensity for repeating his violence.  *See* 28 C.F.R. § 2.80 and 63 Fed. Reg. 39172. These changes which the Commission made to the point scoring system were discretionary factors that had been previously utilized by the D.C. Board to substantiate its upward departures from its guidelines.  *See Ellis*, 84 F.3d at 1419; *McRae v. Hyman*, 667 A. 2d 1356, 1357 (D.C. 1995); *Duckett v. U.S. Parole Comm'n*, 795 F. Supp 133, 137 (M.D. Pa. 1992).  *See also* 63 Fed. Reg. 39172.

Under D.C. parole rules, the "Board was not required to either grant or deny parole based upon the score attained."  *McRae*, 667 A.2d at 1361.  The scoring system under the D.C. Parole Regulations was also determined to be a guide, "not a 'rigid formula', and not a constraint on the discretion conferred upon the Board by the parole statute."  *Ellis*, 84 F.3d at 1419 (*citing McRae*, 667 A.2d at 1360-1361).

In the instant case, we find that Petitioner fails to show that the results under the prior regime, *i.e.* D.C. Board regulations, would be less harsh than under the Commission's guidelines.  Nor has Petitioner shown that the Commission has deprived him of his parole eligibility by enhancing his projected parole eligibility date.

As this Court in *Reynolds* concluded:

> Reynolds also has failed to meet his burden of showing that the Commission's use of the guidelines at § 2.80, which provide for the granting of "presumptive parole dates" up to three years in the future, resulted in increasing his punishment.  The D.C. guidelines contained a provision functionally identical to the Commission's guideline.  That regulation provided that:

> "Notwithstanding any other provision of this section, the Board may order a parole reconsideration date it determines to be appropriate." 28 D.C.M.R. § 104.11. Thus, Reynolds' claim that the old guidelines utilized by the D.C. Board would have given him more lenient treatment than has been ordered by the Commission, is merely speculative. The Supreme Court has held that where the risk of increased punishment under an amended parole scheme is speculative and attenuated, a valid *ex post facto* claim does not exist. *Morales*, 514 U.S. at 509. Because the risk of increasing Reynolds' punishment under the Commission's guidelines is "speculative and attenuated," no valid *ex post facto* claim exists. Accordingly, Reynolds' petition will be denied.

Accordingly, we shall recommend that the Petitioner's Petition for Writ of Habeas Corpus be dismissed.

## III. Recommendation.

Based on the foregoing, it is respectfully recommended that the Petition for Writ of Habeas Corpus be dismissed.

s/ Thomas M. Blewitt  
**THOMAS M. BLEWITT**  
**United States Magistrate Judge**

**Dated: May 23, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROGER L. BROWN, | : | CIVIL ACTION NO. **1:CV-05-0185** |
| Petitioner | : | (Judge Jones) |
| v. | : | (Magistrate Judge Blewitt) |
| TROY WILLIAMSON[8], | : | |
| Respondent | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **May 23, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where

---

[8]Respondent Williamson is the Warden at USP-Lewisburg. He has custody of Petitioner. *See* 28 U.S.C. § 2242 & § 2243. *Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                                                    **s/ Thomas M. Blewitt**
                                                                                     **THOMAS M. BLEWITT**
                                                                                     **United States Magistrate Judge**

**Dated: May 23, 2006**